Alejandro MARGALLI–OLVERA,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 94–1240.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1994.

Decided Dec. 6, 1994.

Rehearing Denied Feb. 9, 1995.

Robert A. Dildine, Minneapolis, MN, argued, for petitioner.

Teresa Wallbaum, Washington, DC, argued (David M. McConnell, on the brief), for respondent.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Alejandro Margalli–Olvera seeks judicial review of a final administrative order of deportation entered by the Board of Immigration Appeals (BIA). Margalli–Olvera makes two primary arguments on appeal. First, he argues that the BIA erred in entering this order notwithstanding the government's

breach of a plea agreement obligating the government to remain silent regarding deportation. Second, Margalli–Olvera argues that the BIA improperly denied his motion to remand for consideration of discretionary relief from deportation under 8 U.S.C. § 1182(c).[1] We agree with him and hold that the BIA erred on both accounts. Accordingly, we remand for further administrative proceedings consistent with this opinion.

## I. BACKGROUND

Alejandro Margalli–Olvera is a Mexican citizen who entered the United States as a non-immigrant visitor on or about July 2, 1981. He began working in the United States (in violation of the terms of his admission) about a month later, and he has continuously resided in the United States since that time. On August 23, 1983, he married Tamra Dee Odegaard, a United States citizen, and his status was adjusted to permanent resident alien on October 29, 1984, based upon this marriage. Alas, theirs was not a marriage made in heaven. The marriage ultimately ended in divorce, but not before Margalli–Olvera had fathered a

daughter by his current girlfriend, Lisa Welle, who is also a United States citizen.

It seems that Margalli–Olvera's troubles were not limited to his relationships with the opposite sex. On January 3, 1986, as part of a plea agreement with the United States Attorney's Office, he pleaded guilty to one count of possessing with intent to distribute cocaine. This plea agreement provides in pertinent part:

> if the defendant participates fully and truthfully in a debriefing, ... the United States will recommend against deportation. Otherwise, the United States will remain silent regarding deportation.

Admin.R. at 55.[2]

On June 16, 1986, the Immigration and Naturalization Service (INS) issued an Order to Show Cause that charged Margalli–Olvera with deportability due to his prior drug conviction. Deportation proceedings were held on September 2, 1987, but were continued until March 22, 1988, on Margalli–Olvera's motion so that he could obtain a transcript of the criminal change of plea proceeding containing the terms of the plea agreement.

---

1. Section 1182(c) (§ 212(c) of the Immigration and Nationality Act) provides in pertinent part:

 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General
 ....

 8 U.S.C. § 1182(c). Although the literal terms of § 212(c) apply only to lawful permanent residents seeking readmission to the United States, it has been applied to lawful permanent residents who have not left the United States, but who meet the seven-year requirement and are facing deportation. *Henry v. I.N.S.*, 8 F.3d 426, 430 (7th Cir.1993).

2. Margalli–Olvera offered testimony to establish the terms of the plea agreement at his March 22 hearing before the immigration judge, but the immigration judge excluded this testimony. Margalli–Olvera had already sought and obtained one continuance in order to obtain a transcript of the change of plea proceeding in which the terms of the plea agreement were disclosed. Admin.R. at 111–13. When he was unable to produce the transcript at the March 22 hearing (the transcript was not filed until April 28, 1988), he proffered the testimony of Lisa Welle, who was

present at the change of plea hearing, to establish the terms of the plea agreement. The immigration judge sustained an INS objection to the introduction of this evidence. Admin.R. at 132–34. On appeal to the BIA, Margalli–Olvera supplemented the record with a transcript of the hearing, but the BIA refused to consider the transcript because it was not part of the record before the immigration judge. Admin.R. at 3 n. 1 (citing *Matter of Haim*, 19 I & N Dec. 641, 643 (BIA 1988)). We are troubled by the BIA's refusal to consider the transcript, given the centrality of the terms of the plea agreement to this appeal, the unavailability of the transcript on March 22 and Margalli–Olvera's timely proffer of Ms. Welle's testimony as to the terms of the agreement. We believe that the initial proffer and later supplementation satisfy Margalli–Olvera's duty to make a record of the plea agreement's terms. Moreover, the government concedes that the transcript accurately reflects the commitment made to Margalli–Olvera. Accordingly, we take the terms of the agreement from the transcript contained in the administrative record. Admin.R. at 53–70.

Margalli–Olvera has not provided any indication that he participated in the debriefing that is a condition for the government's recommendation against deportation. Thus, we assume for purposes of this appeal that Margalli–Olvera participated in no such debriefing.

The immigration judge instructed Margalli–Olvera to make any § 212(c) application and to seek any post-conviction relief before February 1 and March 22, respectively. Margalli–Olvera neither sought post-conviction relief nor made a § 212(c) application.

At the March 22 hearing, Margalli–Olvera admitted that he had been convicted and authenticated the conviction record introduced by the government at the September 2 hearing. Margalli–Olvera's probation officer testified about his progress on probation. Margalli–Olvera's new girlfriend, Lisa Welle, began to testify about the change of plea proceeding but was cut short by an INS objection. In response to the objection, Margalli–Olvera made an offer of proof of an equitable estoppel claim based on the plea agreement. This offer consisted of proof of the following: that the prosecutor in the criminal action had made representations upon which Margalli–Olvera reasonably relied; that the prosecutor should have known that these representations would be relied upon; and that the prosecutor should have known that these representations were false. The immigration judge sustained the INS objection to the testimony concerning the change of plea proceeding, stating that he would not "go behind the conviction record." Admin.R. at 133–34. Margalli–Olvera then sought a second continuance to attack the conviction collaterally. The immigration judge denied this request. Margalli–Olvera briefly testified about his entry into the United States. The INS objected to this testimony on the basis that no § 212(c) application had been filed, and the immigration judge gave Margalli–Olvera an additional extension of time in which to file the application.[3] The immigration judge found Margalli–Olvera to be deportable and limited testimony during the remainder of the hearing to the merits of the § 212(c) application.

The immigration judge issued an oral decision at the close of the hearing. The immigration judge rejected Margalli–Olvera's estoppel argument and stated that the immigration court lacked jurisdiction to review a guilty plea entered in federal court. The immigration judge found Margalli–Olvera to be ineligible for discretionary relief under § 212(c) because he had not acquired seven years of lawful unrelinquished domicile as required by § 212(c). Alternatively, the immigration judge noted that even if Margalli–Olvera's arguments concerning his period of residency were accepted, he still would not satisfy the seven-year requirement for eligibility for § 212(c) relief. The immigration judge ordered Margalli–Olvera deported to Mexico.

Margalli–Olvera appealed to the BIA on April 4, 1988, arguing (1) that the immigration judge erred when he refused to enforce the plea agreement, and (2) that his residency prior to his adjustment of status to lawful permanent resident should be counted toward satisfying the § 212(c) seven-year requirement. Margalli–Olvera also moved to remand the case to the immigration judge on the basis that he had accrued seven years lawful unrelinquished domicile (even under the INS theory of the case) during the pendency of the appeal. On November 3, 1993, the BIA dismissed Margalli–Olvera's appeal and denied his motion to remand. The case comes to us on Margalli–Olvera's timely filed petition for judicial review.

## II. DISCUSSION

Margalli–Olvera raises two issues in his petition for review.[4] First, he argues that the BIA erred in refusing to remand his case for deportation proceedings at which the government remains silent, as required by the plea agreement. In essence, Margalli–Olvera argues that the BIA erred in ordering his deportation where the deportation proceeding was infected by the government's breach of the plea agreement. Second, he argues that the BIA erred in denying his motion to

---

3. Margalli–Olvera completed the application (Form I–191) on March 23, and it was received by the INS on March 28. Admin.R. at 88–89.

4. Margalli–Olvera has been represented by several attorneys during the eight years that this matter has been pending. Not surprisingly, the same lack of continuity that is found in his representation may also be found in the briefs. We have therefore been required to impose an analytical framework upon this case that has been assumed, but never articulated, by the parties.

remand for consideration of his § 212(c) motion in light of his acquisition of seven years' domicile during the pendency of his appeal to the BIA. We address each issue in turn.

### A. Did the BIA err in refusing to remand for specific performance of the plea agreement as a remedy for the government's breach?

■ The appellate jurisdiction of a court of appeals to review final deportation orders is defined in 8 U.S.C. § 1105a(c). Although ignored by the parties, courts of appeals have consistently applied this section as a bar to review of issues not raised before the BIA. *Khalaf v. I.N.S.*, 909 F.2d 589, 592–93 (1st Cir.1990) (claim of persecution "mentioned only in passing" in amnesty application and appeal brief before BIA not considered on appeal); *Alleyne v. I.N.S.*, 879 F.2d 1177, 1182–85 (3d Cir.1989) (court of appeals would not consider issues where notice of appeal to BIA asserted three errors, none of which "even arguably" raised issues asserted in court of appeals). Thus, before we may review the merits of Margalli–Olvera's petition, we must determine whether these issues were presented to the BIA.

■ Margalli–Olvera's arguments before the immigration judge and the BIA were basically, but not completely, identical. Margalli–Olvera presented his argument to the immigration judge as an attempt to apply the doctrine of equitable estoppel (the "estoppel argument"), and the immigration judge understood Margalli–Olvera's argument as an estoppel argument. Margalli–Olvera's posi-

tion before the BIA is more complex. His notice of appeal to the BIA labels his argument as an estoppel argument, and the BIA construed the argument as an estoppel argument. Admin.R. at 3 ("At the hearing and on appeal, the respondent has maintained that the government is estopped from deporting him because the terms of the plea agreement included that deportation proceedings would not be initiated against him."). However, Margalli–Olvera's brief before the BIA specifically argues that the plea agreement was breached and should be enforced (the "breach argument"). In his brief, Margalli–Olvera makes the estoppel argument and the breach argument in the alternative. Admin.R. at 35 ("The United States is bound by its agreement with the respondent [Margalli–Olvera] not to proceed in deportation against him, *or* is equitably estopped from proceeding against him.") (emphasis added). Thus, because Margalli–Olvera made the breach of plea agreement argument as an alternative argument before the BIA, he has preserved the breach issue for judicial review. *Bridges v. Wixon*, 326 U.S. 135, 151–52, 65 S.Ct. 1443, 1451, 89 L.Ed. 2103 (1945).[5]

■ We review the BIA treatment of the breach argument de novo. *Thomas*, 35 F.3d at 1336–37. Issues concerning the interpretation and enforcement of the plea agreement are issues of law on which we owe no deference to the BIA. *See United States v. Coleman*, 895 F.2d 501, 505 (8th Cir.1990) (ambiguity of plea agreement is question of

---

5. Alternatively, were we to conclude that the breach argument was not explicitly raised, we would still consider the argument because Margalli–Olvera's references to reliance upon the plea agreement were sufficient to "focus [the INS's] attention" on the issue of breach of the plea agreement. *Navia–Duran v. I.N.S.*, 568 F.2d 803, 806–07 (1st Cir.1977) (provision of facts surrounding alleged Fourth Amendment violations in obtaining confession sufficient to raise Fifth Amendment voluntariness issue where voluntariness issue noted by immigration judge and raised and rejected in BIA appeal sufficient to raise issue); *Pilapil v. I.N.S.*, 424 F.2d 6, 8–9 (10th Cir.) (issues not raised in hearing before immigration judge cognizable in review of BIA dismissal of appeal where "facts needed to treat the issues" are in the record, and where issue resolved in petitioner's favor, voiding deportation

order), *cert. denied*, 400 U.S. 908, 91 S.Ct. 152, 27 L.Ed.2d 147 (1970). Margalli–Olvera's estoppel argument was grounded upon non-performance of promises made as a part of the plea agreement. These facts are also integral to the breach of plea agreement argument. Margalli–Olvera repeatedly spoke of reasonable reliance as part of the estoppel argument, and reasonable reliance is also integral to the breach of plea agreement argument. *See Thomas v. I.N.S.*, 35 F.3d 1332, 1336–37 (9th Cir.1994). Moreover, in refusing to "go behind the guilty plea," the immigration judge and the BIA both recognized that Margalli–Olvera was raising issues concerning enforcement of the plea agreement. We conclude that Margalli–Olvera's argument, even if labeled as an estoppel argument, was sufficient to focus attention on the issue of breach, and therefore preserves that issue for our review.

law reviewed de novo); *Matter of Lok,* 18 I & N Dec. 101, 107 (BIA 1981) (questions of law are reviewed de novo on petition for review of BIA order). These issues may be broken down into a series of questions. First, does the plea agreement purport to bind the INS? Second, if the agreement purports to bind the INS, does the United States Attorney's Office have the authority validly to enter into an agreement that binds another government agency? Third, if the agreement is valid and binds the INS, do the actions of the INS constitute a breach of the agreement? Fourth, if the INS breached the agreement, is specific performance of the agreement an appropriate remedy for this breach? We answer each of these questions in the affirmative.

## 1. Does the plea agreement purport to bind the INS?

 Plea agreements are contractual in nature, and are interpreted according to general contract principles. *United States v. Britt,* 917 F.2d 353, 359 (8th Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *United States v. Crawford,* 20 F.3d 933, 935 (8th Cir.1994). Application of these contract principles is tempered by the constitutional implications of a plea agreement. *Britt,* 917 F.2d at 359. Allowing the government to breach a promise that induced a guilty plea violates due process. *See Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). The plea agreement uses the term "United States" to refer to the entity that will remain silent at the deportation hearings. "United States" is not defined in the transcript of the change of plea proceeding. When ascertaining the intent of the parties, the language of the agreement, if unambiguous, should ordinarily be conclusive. *Frank B. Hall & Co. v. Alexander & Alexander,* 974 F.2d 1020, 1024 (8th Cir.1992) (applying New York law); *Mark Twain Bank v. Continental Bank, N.A.,* 817 F.Supp. 792, 798 (E.D.Mo.1993) (applying Illinois law). Accordingly, we must determine whether the term "United States" unambiguously includes (or excludes) the INS.

 The government argues that the term "United States" unambiguously refers only to the United States Attorney's Office. This attempt to construe "United States" to mean "United States Attorney's Office" is disingenuous. The government has identified, and our own investigation has revealed, no case that even remotely equates "United States" with "United States Attorney's Office." The government relies upon *Camacho–Bordes v. I.N.S.,* 33 F.3d 26, 28 (8th Cir.1994), for the proposition that a generic reference by the United States Attorney's Office to "the government" or "the United States" does not include the INS. We believe the government's view of *Camacho–Bordes* is overbroad. Rather than announcing such a sweeping rule of interpretation, *Camacho–Bordes* merely stands for the unremarkable proposition that a plea agreement that by its own explicit terms applies only to the United States Attorney's Office does not bind the INS. *Camacho–Bordes* states that "[a]ccording to petitioner, as part of the plea agreement, *the United States Attorney's office agreed* to recommend to the INS that he not be deported." *Id.* at 27 (emphasis added). The unambiguous terms of the *Camacho–Bordes* plea agreement specifically obligated the United States Attorney's Office to recommend to the INS that Camacho–Bordes not be deported. This obligation is of a wholly different nature than the obligation involved in the present case. The obligation in *Camacho–Bordes* involves intra-governmental communication between two unambiguously identified agencies. In the present case, there is neither intra-governmental communication nor clearly identified parties thereto. Rather, in this case there is a duty on the part of "the United States" to remain silent, and the parties to this (non)conversation simply are not identified by the remaining terms of the agreement.

Moreover, it is highly significant that in *Camacho–Bordes,* the restrictive interpretation of the plea agreement was the interpretation advocated by Camacho–Bordes. The *Camacho–Bordes* panel notes that the "transcript of the guilty plea hearing also shows that, as part of the plea agreement, the government agreed to recommend against

deportation, but that *petitioner understood that the INS did not have to follow that recommendation* and could still deport him." *Id.* at 28 (emphasis added). Thus, it is clear that in *Camacho–Bordes,* although the words "United States Attorney's Office" may not have been used, the terms of the plea agreement unambiguously bound only the United States Attorney's Office, and both parties understood that the United States Attorney's Office was the only party that was bound by the agreement. *Camacho–Bordes* is therefore distinguishable from the present case. *Camacho–Bordes* involved terms that specifically excluded the INS. The instant case involves no such specific terms. The government's focus solely upon "magic words" to the exclusion of the surrounding terms of the agreement that give them meaning results in nothing but unhelpful semantic games.

■ We believe that, if unambiguous, the term "United States" is a reference to the entire United States government and all the agencies thereof. *See United States v. Harvey,* 791 F.2d 294, 300–01 (4th Cir.1986); *cf. Lippa's, Inc. v. Lenox, Inc.,* 305 F.Supp. 182, 185 (D.Vt.1969) (FTC administrative proceeding is civil proceeding brought by "United States" within meaning on § 5(b) of Clayton Act); *Hill, Christopher & Phillips, P.C. v. United States Postal Serv.,* 535 F.Supp. 804 (D.D.C.1982) ("United States" as used in Federal Tax Lien Act includes Postal Service). However, in order for the INS to unambiguously be a party to the agreement, such a broad interpretation of "United States" is unnecessary. To find the INS to be a party to the agreement, we merely must find that the term "United States" unambiguously embraces two offices within the Department of Justice (the INS and the United States Attorney's Office).

We turn first to intrinsic evidence. *See* Restatement (Second) of Contracts § 201(2) (1982). The intrinsic evidence supports an interpretation that makes the INS a party to the plea agreement. Deportation proceedings are explicitly referred to in the same sentence that uses the term "United States." Given that the INS conducts these proceedings, the plain language of this sentence contemplates the silence of the INS.

■ This interpretation is bolstered by the fact that a common sense interpretation of "United States" is broad enough to make the INS a party. Although the term "United States" is generally used in a territorial sense, the term "government" (which the government treats as a synonym in this context) has a very expansive meaning. *Webster's Third New International Dictionary* 982 (1961) (defining "government" as "the organization, machinery or agency through which a political unit exercises authority" and "the complex of political institutions ... through which the function of governing is carried out in a specific political unit"). When ascertaining the intent of the parties, "the court may construe the words used in the contract according to their 'ordinary, natural and commonly accepted meaning unless it clearly appears that the parties intended to ascribe to them a peculiar or unusual meaning.'" *Mark Twain Bank,* 817 F.Supp. at 798 (quoting *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1014 (7th Cir.1985)). Thus, in light of the common meaning of "United States" (when used as a reference to the federal government) and the intrinsic evidence, we believe that this agreement unambiguously includes the INS. However, we need not resolve this issue, because we interpret the plea agreement to bind the INS even if the agreement is ambiguous.

We assume, for the sake of argument, that the plea agreement is ambiguous. *Cf. Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 671, 65 S.Ct. 870, 880, 89 L.Ed. 1252 (1945) ("the term United States may be used in any one of several senses"). In other disputes over the interpretation of plea agreements, less vaguely worded phrases defining the scope of immunity and the scope of the government's obligation under a plea agreement have been found to be ambiguous. *Harvey,* 791 F.2d at 300–03 (references to "the Eastern District of Virginia" and "the Government" in defining scope of immunity found ambiguous); *United States v. Anderson,* 970 F.2d 602, 606 (9th Cir.1992), *amended on denial of reh'g,* 990 F.2d 1163 (1993) (references to government in defining scope of government's obligation concerning parole found ambiguous).

The ambiguity in this case stems from whether or not "United States" includes the INS.

Where a plea agreement is ambiguous, the ambiguities are construed against the government. *Coleman*, 895 F.2d at 505; *Harvey*, 791 F.2d at 300–01; *Carnine v. United States*, 974 F.2d 924, 928–29 (7th Cir.1992); *Anderson*, 970 F.2d at 607; *cf. Davis v. United States*, 649 F.Supp. 754, 758 (C.D.Ill.1986). In cases where an ambiguity arises over the parties bound by the agreement, courts have consistently interpreted plea agreements in an expansive manner. In *Thomas*, a similar (albeit a more explicit) agreement was held to be unambiguous in its application to the INS. 35 F.3d at 1337–1338. In *Anderson*, the government entered a plea agreement that stipulated that the pleaded-to offenses "all will be paroleable [sic]." *Anderson*, 970 F.2d at 604. The government then contended that this agreement did not bind the Parole Commission. The Ninth Circuit summarily rejected this argument. *Id.* at 605 n. 5. In *Davis*, the United States Attorney's Office promised that "the government" would not bring additional charges against the defendant that were directly or indirectly based upon statements or testimony by the defendant. The district court held that the Parole Commission was a party to this agreement, and that the Commission had breached the agreement by using information provided by the defendant to increase his sentence. *Davis*, 649 F.Supp. at 759. In *Harvey*, the Fourth Circuit found that a promise not to prosecute made by an Assistant United States Attorney for the Eastern District of Virginia "must be interpreted to prevent further prosecutions for [the covered] offenses anywhere *and by any agency of the government.*" *Harvey*, 791 F.2d at 303 (emphasis added). The lesson of these cases is clear; an Assistant United States Attorney enters into a plea agreement on behalf of the United States government as a whole. Accordingly, promises made by an Assistant United States Attorney bind all agents of the United States government. Therefore, we hold that unless a plea agreement uses specific language that limits the agents bound by the promise, ambiguities regarding the agencies bound by the agreement are to be interpreted to bind the agency at issue. *See Harvey*, 791 F.2d at 303; *Anderson*, 970 F.2d at 608.

### 2. Does the United States Attorney's Office have authority validly to enter into an agreement that binds the INS?

Although the plea agreement on its face purports to bind the INS, the INS will only be bound by the Assistant United States Attorney's promise if an agreement by an Assistant United States Attorney purporting to bind the INS is valid. "The rule requiring compliance by the government with promises made during plea bargaining and analogous contexts generally requires that the agent be authorized to make the promise." *Thomas*, 35 F.3d at 1138.

Normally, authorization must be in the form of actual authority; the doctrines of estoppel and apparent authority usually do not apply to bind the government. *Id.* Actual authority may be either express or implied (*i.e.*, incidental to a grant of express authority). *Id.* (citing W. *Edward Sell, Sell on Agency* 25–31 (1985)). Thus, as the *Thomas* court observed, the Assistant United States Attorney's promise will bind the INS if the Assistant United States Attorney was expressly authorized to make such a promise, or if the "authority for making such a promise is incidental to some other express grant of authority." *Id.* United States Attorneys are authorized to "prosecute for all offenses against the United States" within their respective districts. 28 U.S.C. § 547(1) (1988).

We agree with the Ninth Circuit that the express grant of "authority to 'prosecute' implies the power to make plea agreements incidental to prosecution." *Thomas*, 35 F.3d at 1339. The Supreme Court has noted that "disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice." *Santobello*, 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d 427. The recognized importance of plea bargaining leads us to conclude that the authority to enter such a plea bargain should be inferred from authority to prosecute because "the

making of [the plea bargain] is incidental to the [prosecution], usually accompanies the [prosecution], or is reasonably necessary to accomplish it." Restatement (Second) of Agency § 50 (1958).

 Our reasoning is reinforced by that of the Fourth Circuit. In holding that the promise of a United States Attorney for one district could bind a United States Attorney in another district, that circuit accurately described the agent-principal relationship:

> [T]hough the Government negotiates its plea agreements through the agency of specific United States Attorneys—as necessarily it must—the agreements reached are those of the Government. It is the Government at large ... that is bound by plea agreements negotiated by agents of Government. Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that 'agrees' to whatever is agreed to. Of course the Government may—and quite readily can—'agree' through its agents that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is limited territorially or temporally, or that the Government's obligation is otherwise qualified. But the mere fact that a particular agent, holding office in a particular district, and for a limited term of office makes the 'agreement'—'agrees'—does not impose those limitations. In sum, ... the proper way for plea agreements to express such limitations is as limitations on the Government's general obligation—a thing quite

easily done—and not by technically inaccurate identifications of particular agents or agencies of Government as *the* contracting party.

*Harvey*, 791 F.2d at 302–03 (emphasis in original).[6] Therefore, we agree with the excellent reasoning of the Ninth Circuit's *Thomas* opinion and hold that an Assistant United States Attorney has actual authority to bind the INS.

### 3. Does the conduct of the INS constitute a breach of the plea agreement?

 This issue requires very little discussion. When, in a plea agreement, the government promises to remain silent or to refrain from making a recommendation, its failure to do so is a breach of the plea agreement.[7] *Thomas*, 35 F.3d at 1336–38; *United States v. Van Horn*, 976 F.2d 1180 (8th Cir.1992) (government's recommendation of upward departure breached plea agreement in which government agreed not to seek departure); *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d 427. Thus, we hold that the INS's failure to remain silent regarding deportation is a breach of a plea agreement in which the prosecutor (as agent for the government) promised that "the United States" will remain silent.

### 4. Is specific performance the appropriate remedy for the government's breach of the plea agreement?

 There are two potential remedies for the government's breach of a plea agree-

---

6. Although it does not contain any extended analysis, footnote 5 of *United States v. Anderson*, 970 F.2d at 605 n. 5, confirms that an Assistant United States Attorney's promise may bind other agencies. In that footnote, the Ninth Circuit tersely "reject[ed] the government's assertion that the Parole Commission was not a party to the [disputed] plea agreement." *Accord United States v. Keller*, 902 F.2d 1391, 1393 (9th Cir.1990) (Parole Commission bound by promises made by United States Attorney, although Parole Commission's conduct did not constitute breach of agreement); *United States v. Jureidini*, 846 F.2d 964, 966 n.* (4th Cir.1988) ("Both the United States Attorney and the Parole Commission are agents of the Government and are therefore bound by what are, in effect, *Government* promises.") (internal quotation and citation omitted; emphasis in original); *Davis*, 649 F.Supp. at 759

(Parole Commission breached promise made by United States Attorney's Office that "it [the government] will not use any statement or testimony by the defendant, either directly or indirectly to bring additional criminal charges against the defendant" by increasing defendant's sentence based upon this information).

7. The government makes much of the fact that Margalli–Olvera was statutorily ineligible for § 212(c) relief because he did not satisfy the seven-year residency requirement. However, as is commonly the case, the plea agreement imposed duties on the government over and above those imposed by statute. For example, Santobello had no statutory right to the government's silence at sentencing. Santobello's right derived solely from the contractual plea agreement.

ment: remand for specific performance and withdrawal of the guilty plea. *United States v. Walker*, 927 F.2d 389, 391 (8th Cir.1991). The decision as to which to grant rests in the sound discretion of the court. *United States v. McGovern*, 822 F.2d 739, 746 (8th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 352, 98 L.Ed.2d 377 (1987). Specific performance is the preferred remedy. *United States v. Kurkculer*, 918 F.2d 295 (1st Cir.1990). In determining whether to grant specific performance, the court should consider (1) the possible prejudice to the defendant, (2) the conduct of the government, and (3) the public interest. *Walker*, 927 F.2d at 391. Of these factors, prejudice to the defendant is the most important. *McGovern*, 822 F.2d at 746. If the defendant's detrimental reliance has been great, the government must be held to its promises. *Walker*, 927 F.2d at 391.

 In considering the first factor, we find that Margalli–Olvera relied upon the promises made by the government by waiving his right to a jury trial. Admin.R. at 62–63; *cf. United States v. Coon*, 805 F.2d 822, 825 (8th Cir.1986); *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499, 30 L.Ed.2d 427. Margalli–Olvera also relied on the government's promises when he waived his right to proceed on the remaining charge by way of indictment. As to the second factor, "the only evasion of a solemn promise in this case was by the government itself." *Thomas*, 35 F.3d at 1343. Thus, the only inequitable behavior in this case is that of the government. Finally, specific enforcement of the government's promise is squarely in the public interest. The government makes much of the established rule that an immigration judge may not examine the validity of a conviction. However, this jurisdictional limitation upon immigration judges merely means that the immigration judge cannot hear arguments directed toward vacating the plea or attacking the conviction. This is not the remedy that Margalli–Olvera seeks, and thus the cases cited by the government in which such a remedy was denied are inapposite.[8] Because the immigration judge cannot

consider vacating the plea, the preferred and only realistic remedy is specific performance. Enforcement of plea agreements is necessary for their effective functioning as a tool for disposing of criminal cases, and plea bargaining is an important part of the criminal justice system. *Santobello*, 404 U.S. at 260, 92 S.Ct. at 498, 30 L.Ed.2d 427. Thus, all three *Walker* factors and the preference for specific performance counsel in favor of specific performance rather than leaving Margalli–Olvera to challenge the voluntariness of his plea. We therefore conclude that the appropriate remedy for the government's breach of a promise to remain silent concerning deportation is to remand for specific performance of the plea agreement by remanding for a new deportation hearing at which the INS will remain silent.

**B. Was the BIA's denial of Margalli–Olvera's motion to remand based upon his newly acquired residency an abuse of discretion?**

 We review the denial of a motion to remand for abuse of discretion. *Holley v. I.N.S.*, 727 F.2d 189, 190–91 (1st Cir.1984) (Breyer, J.). The BIA denied Margalli–Olvera's motion to remand on two alternate grounds. First, the motion was denied because the BIA determined that Margalli–Olvera's appeal was frivolous, and therefore Margalli–Olvera's residency during the pendency of the BIA appeal should not count toward the seven-year statutory requirement. Alternatively, the BIA held that because Maraglli–Olvera did not challenge his deportability, his residency during the period after he conceded deportability before the immigration judge does not count toward the seven-year statutory minimum. We hold that the INS abused its discretion in making these determinations.

The BIA held that because Margalli–Olvera's appeal was frivolous, his accrued residency during the pendency of the appeal should not count toward the seven-year statutory minimum. Margalli–Olvera appealed

8. Similarly, because the remedy sought is specific performance of the plea agreement, the immigration judge's lack of jurisdiction over equitable claims for relief is irrelevant. Moreover, the

availability of coram nobis or habeas relief does not preclude review on a petition for review. *Pilapil*, 424 F.2d at 8–9.

two issues: (1) whether in light of the Amnesty Program found in 8 U.S.C. § 1255a, the immigration judge erred in refusing to count Margalli–Olvera's residency before he became a legal permanent resident toward the required seven years, and (2) whether the immigration judge erred in refusing to enforce the plea agreement presented in the alternative as an estoppel and breach argument.

■ The BIA did not abuse its discretion in concluding that the first issue was frivolous. Margalli–Olvera entered the United States on or about July 2, 1981. He became a legal permanent resident on October 29, 1984. The immigration judge ordered Margalli–Olvera deported on March 22, 1988, three and one-half years after he became a permanent resident and slightly less than six years and nine months after his initial entry into the United States. Thus, even if the time of Margalli–Olvera's residence before he became a permanent resident were counted, it would not add up to seven years. If this were the only issue appealed, the BIA's conclusion that the appeal was frivolous would not be an abuse of discretion. However, this was not the only issue involved in the appeal.

■ Margalli–Olvera also appealed the breach of the plea agreement. The BIA construed this as an estoppel argument that it found to be frivolous.[9] However, the BIA did not fully consider all the arguments made on appeal. Margalli–Olvera also argued in the alternative that the agreement should be enforced against the government. If the BIA had considered this argument, it should have found that the appeal was not frivolous. The BIA abused its discretion by failing to consider the entirety of Margalli–Olvera's argument before labeling the appeal as frivo-

lous. *Cf. Arkansas Medical Soc'y v. Reynolds,* 6 F.3d 519, 529 (8th Cir.1993); *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

■ In the alternative, the BIA denied the motion to remand because Margalli–Olvera did not appeal the finding that he was deportable. Margalli–Olvera appealed the order of deportation, and under the established agency precedent of *Lok,* the newly accumulated residency period is to be counted if it is acquired before a final administrative order of deportation is entered.[10] In *Lok,* the respondent alien conceded deportability before the immigration judge, sought discretionary relief under § 212(c), and appealed an adverse decision by the immigration judge. *Lok,* 18 I & N Dec. at 103. Margalli–Olvera challenged his deportation order on similar grounds, arguing that the government was estopped from attempting to deport him. Lok and Margalli–Olvera thus both conceded deportability but appealed the ultimate deportation order. *Lok* held that "the policies of the [Immigration and Naturalization] Act would best be served by deeming the lawful permanent resident status of an alien to end *with the entry of a final administrative order of deportation....*" *Id.* at 105 (emphasis added); *accord Matter of Cerna,* Int. Dec. # 3161 at 3–4 (BIA 1991).

The rule established in *Lok* has been repeatedly and consistently applied.[11] The case law relied upon by the BIA simply does not support the BIA's newly created position that accrued residency during an appeal to the BIA will not be counted unless deporta-

---

9. Because we find that the BIA's failure to consider Margalli–Olvera's alternative breach argument was an abuse of discretion, we do not reach the issue of whether the BIA's treatment of the estoppel argument was permissible.

10. Although Margalli–Olvera argues that he appealed the issue of his deportability, this argument misstates the facts. Deportability was predicated on Margalli–Olvera's prior conviction which was not contested by Margalli–Olvera. He argued for specific performance in the deportation proceeding, but this argument does not go to deportability, but only to whether, deportabili-

ty conceded, he will be actually deported. The "deportability/deportation order" distinction is not important, because the determinative factor is whether the accumulated residency is before or after a final administrative order of deportation is entered.

11. Frivolous appeals to the BIA are an exception to the *Lok* rule as recognized in *I.N.S. v. Rios–Pineda,* 471 U.S. 444, 450, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985), but as discussed above, Margalli–Olvera's appeal was not frivolous.

**357**

bility is contested. The cases cited by the INS merely hold that residency accrued after a final order of deportation has been entered will not be counted. For example, *Avila–Murrieta v. I.N.S.*, 762 F.2d 733, 733–35 (9th Cir.1985), held that an alien whose deportation had been *finally ordered by the BIA* could not count his residency during judicial review involving only § 212(c) discretionary relief. Similar facts would not arise in Margalli–Olvera's case until after 1993, when the BIA dismissed his appeal, and *Avila–Murrieta* is therefore inapposite.

 *Henry v. I.N.S.*, 8 F.3d 426 (7th Cir.1993), is similarly inapposite. *Henry* addressed the issue of whether aliens who had satisfied the seven-year requirement prior to the entry of a final administrative order of deportation became ineligible to reopen their § 212(c) applications upon the entry of a final administrative order of deportation. *Henry* held that although (under *Lok*) the entry of a final administrative order of deportation terminated an alien's status as lawful permanent resident for purposes of initially meeting the seven-year requirement, it did not preclude reopening of the § 212(c) applications based on previously acquired residency. *Henry* therefore fails to support the INS position. In light of this established body of law that holds that residency accumulated prior to entry of a final administrative order is counted toward the § 212(c) seven-year requirement, we hold that the BIA's sudden and unexplained refusal to count this time toward the § 212(c) minimum is an abuse of discretion. *Association of Data Processing Serv. Orgs. v. Board of Governors of the Fed. Reserve Sys.*, 745 F.2d 677, 683 (D.C.Cir. 1984) (Scalia, J.).

### III. CONCLUSION

Because we hold that the government breached its plea agreement with Margalli–Olvera by advocating his deportation, we grant Margalli–Olvera's petition for review of his deportation order and remand the case to the INS for further proceedings consistent with this opinion. We also hold that the BIA's denial of Margalli–Olvera's motion to remand was an abuse of its discretion because the BIA failed adequately to consider

the factors relevant to the deportation proceeding and because the position of the BIA is a sudden and unexplained departure from precedent. Accordingly, we grant Margalli–Olvera's petition for review of the denial of his motion to remand, and we remand the case to the INS for further proceedings consistent with this opinion. On remand, Margalli–Olvera is to receive a hearing on the merits of his § 212(c) motion, and the government is to remain silent, as it agreed to do, at this hearing.