**UNITED STATES of America, Appellee,**

v.

**David G. VAN THOURNOUT, Appellant.**

No. 94–1599.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1996.

Decided Nov. 13, 1996.

Charles S. Crook, III, argued, Des Moines, IA, for Appellant.

Lester A. Paff, argued, Des Moines, IA, for Appellee.

Before McMILLIAN, HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

David G. Van Thournout appeals from a final judgment entered in the District Court for the Southern District of Iowa finding him guilty, pursuant to a guilty plea, of conspiracy to distribute lysergic acid diethylamide (LSD), in violation of 21 U.S.C. § 846, and sentencing him to a mandatory minimum term of 60 months imprisonment, to be served consecutively to another federal sentence, 4 years supervised release and a special assessment of $50.00. For reversal, Van Thournout argues the government breached its plea agreement to recommend concurrent sentences and the district court erred in calculating the weight of the LSD for purposes of applying the mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(B)(v), pursuant to *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). For the reasons discussed below, we vacate the sentence and remand the case to the district court for further proceedings consistent with this opinion.

Following oral argument, the panel referred this appeal to the court en banc pending the rehearing en banc of *United States v. Stoneking*, 60 F.3d 399 (8th Cir.1995) (banc) (*Stoneking*), *cert. denied*, — U.S. —, 116 S.Ct. 926, 133 L.Ed.2d 855 (1996). The appeal was held in abeyance and, now that the court en banc has decided the *Stoneking* case, the court en banc has referred this appeal back to the panel. The panel ordered reargument and we are now ready to decide the case.

The facts are not disputed. In April 1990 a federal grand jury in the Southern District of Iowa indicted Van Thournout and others, and charged them with various drug offenses. In August 1990, pursuant to a written plea agreement, Van Thournout pleaded guilty in the Southern District of Iowa to one count of conspiracy to distribute LSD. In October 1990, before sentencing, Van Thournout fled and moved to Wyoming. In November 1991, he was arrested in Wyoming on drug offense charges. Pursuant to a written plea agreement, Van Thournout pleaded guilty in the District of Wyoming to one count of manufacturing marijuana, in violation of 21 U.S.C. § 841(a)(1), and was sentenced to 63 months imprisonment. The Wyoming plea agreement provided in part that "[t]he United States will recommend that any term of imprisonment to which the Defendant is sentenced in the District of Wyoming should be served concurrently with the term of imprisonment to which Defendant is awaiting sentencing in the Southern District of Iowa, pursuant to a plea agreement on file in that district concerning an unrelated criminal act."

Van Thournout was later returned to the Southern District of Iowa. In April 1993 the district court sentenced him to a total of 156 months imprisonment, which included a 60–month mandatory minimum sentence for conspiracy to distribute 8.5 grams of LSD, including the weight of the carrier medium, to be served concurrently with the Wyoming sentence, 4 years supervised release, and a special assessment of $50.00.

Then, in November 1993, the Sentencing Commission amended the LSD sentencing guidelines. Under the amended LSD sentencing guidelines, the weight of the LSD is calculated on the basis of .4 mg per dose. U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (1993) (amendment 488, effective Nov. 1, 1993). The district court applied the amended LSD sentencing guidelines retroactively and ordered Van Thournout should be resentenced. Counsel for Van Thournout requested that, consistent with the Wyoming plea agreement, the Assistant United States Attorney recommend concurrent sentences. The Assistant United States Attorney requested consecutive sentences (a total of 123 months imprisonment). The district court then resentenced Van Thournout to a mandatory minimum sentence of 60 months imprisonment, to be served consecutively to the Wyoming sentence, for a total of 123 months imprisonment, 4 years supervised release and a special assessment of $50.00. The district court explained that imposing consecutive sentences would constitute an appropriate incremental sentence for the offense con-

duct in the Southern District of Iowa. This appeal followed.

## BREACH OF PLEA AGREEMENT

Van Thournout first argues the government breached the Wyoming plea agreement to recommend concurrent sentences. He argues the Wyoming plea agreement expressly provided that "[t]he United States will recommend that any term of imprisonment to which the defendant is sentenced in the District of Wyoming should be served concurrently with the term of imprisonment to which the defendant is awaiting sentencing in the Southern District of Iowa." He argues the Assistant United States Attorney breached the Wyoming plea agreement by requesting the district court impose consecutive rather than concurrent sentences on resentencing.

The government argues that the Wyoming plea agreement did not bind the Southern District of Iowa and in any event promised only that concurrent sentences would be "recommended." Even assuming the Wyoming plea agreement obligated the Assistant United States Attorney in the Southern District of Iowa to recommend concurrent sentences, the government argues the plea agreement could not bind the district court. *See, e.g., Jones v. Petrovsky,* 631 F.2d 595, 597 (8th Cir.1980) (per curiam) (plea agreement does not bind court). The government argues consecutive sentences were necessary to achieve an appropriate incremental punishment for the instant offense that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time under U.S.S.G. § 5G1.3(c) comment. (application note 3 & background note). *E.g., United States v. Gullickson,* 981 F.2d 344, 346–47 (8th Cir.1992). The government also argues that the district court could not have imposed a concurrent sentence because a concurrent sentence would have amounted to a departure below the applicable mandatory minimum sentence. A departure below the applicable mandatory minimum sentence can not be granted in the absence of a government motion pursuant to 18 U.S.C. § 3553(e), and the government did not file a § 3553(e) motion in the present case.

■ As a preliminary matter, the government argues we should not address this issue on direct appeal. The government argues questions about the enforcement of plea agreements should be first raised in the district court by motion to withdraw the plea under Fed.R.Crim.P. 32, by motion to reduce or correct the sentence under Fed.R.Crim.P. 35, or by motion to vacate, set aside or correct the sentence under 28 U.S.C. § 2255. *E.g., United States v. Murphy,* 899 F.2d 714, 716 (8th Cir.1990); *United States v. Ulland,* 638 F.2d 1150, 1151 (8th Cir.1981) (per curiam).

We think the issue of breach of the plea agreement is cognizable on direct appeal in the present case. Because Van Thournout has already been sentenced (twice), he cannot now file a motion to withdraw the plea in order to raise the issue of the breach of the plea agreement. After sentence is imposed, the plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255. Fed.R.Crim.P. 32(e). In any event, as counsel stated during oral argument, Van Thournout does not want to withdraw his plea; rather, he wants to enforce the plea agreement by making the Assistant United States Attorney recommend concurrent sentences. Nor can Van Thournout file a motion to reduce or correct the sentence in order to raise the issue of the breach of the plea agreement; the current version of Fed.R.Crim.P. 35 is much more limited than the former Rule 35.[1]

---

1. Under the former Rule 35, which remains applicable to offenses committed before November 1, 1987, the effective date of the Sentencing Guidelines, the district court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided for reduction of sentence, that is, within 120 days after the sentence is imposed, after receipt of the mandate issued upon affirmance of the judgment or dismissal of the appeal, or after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. In comparison, under the current Rule 35, the district court can correct a sentence upon remand following appeal under 18 U.S.C. § 3742, may reduce a sentence on motion of the government after imposition of sentence for substantial assistance, or may correct technical errors within 7 days after imposition of sentence.

Van Thournout could file a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 in order to raise the issue of the breach of the plea agreement. *See Clemente v. United States,* 42 F.3d 1384 (1st Cir.1994) (table) (text at 1994 WL 690575) (§ 2255 motion); *Bemis v. United States,* 30 F.3d 220, 221 (1st Cir.1994) (§ 2255 motion); *cf. Allen v. Hadden,* 57 F.3d 1529 (10th Cir.) (motion to vacate invalid convictions), *cert. denied,* —— U.S. ——, 116 S.Ct. 544, 133 L.Ed.2d 447 (1995); *United States v. Harvey,* 791 F.2d 294, 297 (4th Cir.1986) (motion to enforce plea agreement by enjoining prosecution in another district). However, we see no reason to refuse to address this issue on direct appeal only to force Van Thournout to file a § 2255 motion. The issue of the breach of the plea agreement was raised in the district court by the specific request by the defense that the Assistant United States Attorney recommend concurrent sentences and the Assistant United States Attorney's response recommending consecutive sentences. Even though the district court did not decide whether the plea agreement had been breached and instead imposed the consecutive sentence as necessary to achieve an appropriate incremental punishment for the instant offense under U.S.S.G. § 5G1.3(c) (policy statement), the issue of the breach of the plea agreement directly affects the lawfulness of the sentence, which is precisely what is under review in this sentencing guidelines appeal. *Cf. Margalli–Olvera v. INS,* 43 F.3d 345, 350–51 (8th Cir.1994) (issues concerning interpretation and enforcement of plea agreement considered in petition for judicial review of deportation order); *United States v. Britt,* 917 F.2d 353, 356, 359–61 (8th Cir.1990) (order vacating first guilty plea for defendant's breach reviewed on direct appeal of conditional second guilty plea reserving right to appeal vacating of first guilty plea), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *United States v. Coleman,* 895 F.2d 501, 502, 505–06 (8th Cir.1990) (issues concerning interpretation of plea agreement reviewed in government's appeal of departure below statutory mandatory minimum sentence).

■ Issues concerning the interpretation and enforcement of the plea agreement are issues of law reviewed de novo. *United States v. Coleman,* 895 F.2d at 505. "A plea agreement is contractual in nature and generally governed by ordinary contract principles. A plea agreement is more than merely a contract between two parties, however, and must be attended by constitutional safeguards to ensure a defendant receives the performance he [or she] is due." *United States v. Britt,* 917 F.2d at 359. "Allowing the government to breach a promise that induced a guilty plea violates due process." *Margalli–Olvera v. INS,* 43 F.3d at 351, *citing Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984), *and Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). "[W]ith respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the 'honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government.'" *United States v. Harvey,* 791 F.2d at 300, *citing United States v. Carter,* 454 F.2d 426, 428 (4th Cir.1972). "There are two potential remedies for the government's breach of a plea agreement: remand for specific performance and withdrawal of the guilty plea. The decision as to which to grant rests in the sound discretion of the court. Specific performance is the preferred remedy." *Margalli–Olvera v. INS,* 43 F.3d at 354–55 (citations omitted).

■ The government argues there was no breach because any promise made by an Assistant United States Attorney for the District of Wyoming in a plea agreement would not be binding on an Assistant United States Attorney in the Southern District of Iowa. We disagree. Absent an express limitation, any promises made by an Assistant United States Attorney in one district will bind an Assistant United States Attorney in another district. *See id.* at 352–54 (plea agreement by "the United States" or "the government" binds on all agencies thereof, including INS); *Thomas v. INS,* 35 F.3d 1332, 1338–41 (9th Cir.1994) (United States Attorney has implied actual authority to bind the government, including INS, as part of plea agree-

ment, not to seek deportation); *United States v. Anderson,* 970 F.2d 602, 605 n. 5 (9th Cir.1992) (plea agreement by "the government" binds parole commission), *amended on denial of reh'g,* 990 F.2d 1163 (1993); *United States v. Harvey,* 791 F.2d at 303 (plea agreement by Assistant United States Attorney for Eastern District of Virginia binds government at large, not just specific United States Attorneys or United States Districts). *But cf. San Pedro v. United States,* 79 F.3d 1065, 1068–72 (11th Cir.1996) (holding United States Attorney did not have authority to promise nondeportation as part of plea agreement); *United States v. Rourke,* 74 F.3d 802, 806 (7th Cir.) (holding that although Assistant United States Attorney's use of term "the government" at plea hearing was not as specific as it might have been and could be interpreted to refer to and include each of governmental agencies involved, here the parties understood plea agreement to bind only office of United States Attorney for Northern District of Illinois and defendant and not FAA), *cert. denied,* —— U.S. ——, 116 S.Ct. 1840, 134 L.Ed.2d 942 (1996); *United States v. Annabi,* 771 F.2d 670, 672 (2d Cir.1985) (per curiam) (holding plea agreement binds only office of United States Attorney for district in which plea is entered unless it affirmatively appears that agreement contemplates broader restriction).

In *United States v. Harvey,* the Fourth Circuit rejected the government's argument and explained the rationale for holding that a United States Attorney in one district could make a promise binding a United States Attorney in another district.

> [T]hough the Government negotiates its plea agreements through the agency of specific United States Attorneys—as necessarily it must—the agreements reached are those of the Government. It is the Government at large—not just specific United States Attorneys or United States *"Districts"*—that is bound by plea agreements negotiated by agents of Government. Whenever a United States Attorney negotiates and enters a plea agreement, it is the Government that "agrees" to whatever is agreed to. Of course the Government may—and quite readily can—"agree" through its agents

> that only certain of its agents are to be obligated in particular respects, or that the Government's obligation is limited territorially or temporally, or that the Government's obligation is otherwise qualified. But the mere fact that a particular agent, holding office in a particular district, and for a limited term of office makes the "agreement"—"agrees"—does not impose those limitations. In sum, ... the proper way for plea agreements to express such limitations is as limitations on the Government's general obligation—a thing quite easily done—and not by technically inaccurate identifications of particular agents or agencies of Government as *the* contracting party.

791 F.2d at 302–03 (emphasis in original).

■ We also reject the government's argument that there was no breach because the government only promised to "recommend" concurrent sentences which the district court did not have to follow. In the Wyoming plea agreement, the government promised to recommend concurrent sentences but in fact recommended consecutive sentences. The government's failure to recommend concurrent sentences breached the plea agreement. *Cf. United States v. Clark,* 55 F.3d 9, 11–13 (1st Cir.1995) (government breached its plea agreement not to oppose acceptance-of-responsibility deduction by suggesting that adjustment was inappropriate), *cert. denied,* —— U.S. ——, 117 S.Ct. 272, 136 L.Ed.2d 195 (1996) (following remand); *Margalli-Olvera v. INS,* 43 F.3d at 354 (government failure to remain silent regarding deportation breached plea agreement in which prosecutor promised "the United States" will remain silent); *United States v. Rewis,* 969 F.2d 985, 988 (11th Cir.1992) (government breached plea agreement not to recommend sentence by addressing defendant's failure to cooperate). The fact that the government's recommendation would not have bound the district court or that, regardless of the government's recommendation, the district court could have properly imposed consecutive sentences, as it did, in order to achieve the appropriate incremental punishment for the instant offense under U.S.S.G. § 5G1.3(c) (policy statement), does not excuse the gov-

ernment's breach. Nor do we think that the fact that the recommendation of concurrent sentences may have constituted a departure below the applicable statutory mandatory minimum sentence excused the government's breach. As noted in *Margalli–Olvera v. INS*, 43 F.3d at 354 & n. 7, plea agreements often impose duties on the government over and above those imposed by statute.

 In the present case, the plea agreement required the government to recommend concurrent sentences, and the government breached the plea agreement by recommending consecutive sentences. For that reason, we vacate the sentence and remand the case to the district court for further proceedings consistent with this opinion. Van Thournout is entitled to specific performance of the plea agreement; on remand, the government is to recommend concurrent sentences. The district court is, of course, under no obligation to follow the government's recommendation of concurrent sentences and may reimpose consecutive sentences under U.S.S.G. § 5G1.3(c) (policy statement).

## AMBIGUITY AFTER *CHAPMAN*

 We address this issue only because it could arise on remand. Van Thournout also argues the district court erred in calculating the weight of the LSD for purposes of applying the mandatory minimum sentence, 21 U.S.C. § 841(b)(1)(B)(v), pursuant to *Chapman v. United States*. He argues the amended LSD guidelines created an ambiguity between the method to be used in calculating the weight of LSD under the sentencing guidelines (uniform weight per dose) and under the mandatory minimum sentence provisions (weight of LSD includes weight of carrier medium). We decided this issue in *United States v. Stoneking*, 60 F.3d at 402, where we held that the amended LSD guidelines did not alter the holding in *Chapman v. United States* that the weight of the carrier medium is included in the calculation of the entire weight of the mixture or substance containing a detectable amount of LSD for purposes of applying the mandatory minimum sentence provisions. The district court

correctly found that Van Thournout was subject to the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(v) because his offense conduct involved more than 8.5 grams of LSD (including weight of carrier medium).

Accordingly, we vacate the sentence and remand the case to the district court for further proceedings consistent with this opinion.