UNITED STATES of America, Appellee,

v.

Robert James STONEKING, Appellant.

No. 94–1236.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 6, 1994.

Decided July 3, 1995.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, En Banc.

McMILLIAN, Circuit Judge.

Robert James Stoneking appeals from a final order entered in the District Court[1] for the Southern District of Iowa denying his motion to reduce his sentence. A panel of this court reversed and remanded for resentencing. On the court's own motion, the case was reheard en banc following supplemental briefing. For the reasons discussed below, we affirm the order of the district court.

The following statement of background facts is taken in large part from the panel opinion which was vacated by the order granting rehearing en banc. Stoneking was indicted on four counts of distribution of lysergic acid diethylamide (LSD), a Schedule I controlled substance. Under a plea agreement, he entered a plea of guilty to one count of conspiracy to distribute LSD in violation of 21 U.S.C. § 846. In the plea agreement, he admitted that he had conspired to distribute LSD weighing more than 10 grams, including its carrier medium, blotter paper. (According to the presentence report (PSR), the actual combined weight of the LSD and the blotter paper was 10.54 grams.) Under 21 U.S.C. § 841(b)(1)(A)(v), a mandatory minimum sentence of 10 years is imposed for a drug offense involving "10 grams or more of a mixture or substance containing a detectable amount of [LSD]." The plea agreement acknowledged that the offense carried that statutory mandatory minimum sentence. The district court initially imposed a sentence of 10 years (120 months) in conformity with the mandatory minimum sentence. (The PSR calculation was offense level 30 and criminal history category I for a sentencing guideline range of 97 to 121 months.)

Later, on motions of the government, the district court reduced Stoneking's sentence

Dean Stowers, Des Moines, IA, argued, for appellant.

Lester A. Paff, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

---

1. The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

to 78 months (July 1993) and then to 72 months (September 1993) for substantial assistance to the government. The motions to reduce encompassed the downward departure below a mandatory minimum sentence contemplated by both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).

Still later, the guideline that determines the calculation of the amount of LSD involved in a drug offense was modified by Amendment 488. *See* U.S.S.G. § 2D1.1(c) (1993) (effective Nov. 1, 1993). At the time of Stoneking's initial sentencing, the Guidelines directed that "the weight of a controlled substance ... refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) (Drug Quantity Table) (1992). The amended guideline alters the method of determining the weight of pure LSD and its carrier medium for sentencing purposes. Amendment 488 now instructs that "[i]n the case of LSD on a carrier medium (e.g., a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table." U.S.S.G. § 2D1.1(c) (1993). A typical single dose of pure LSD is estimated to weigh .05 mg. *See* U.S.S.G. § 2D1.1, comment. (n.10) (Typical Weight Per Unit Table) (1990).

On its own motion, the district court requested supplemental briefing from the parties on whether a further reduction in Stoneking's sentence would be appropriate in light of the amended guideline. Information from the probation office showed that Stoneking had been responsible for distribution of 1773 dosage units of LSD. Under the amended guideline, the number of dosage units is multiplied by 0.4 mg per dose, resulting in a recalculated weight of 709 mgs. The district court thus determined that recalculation of the sentence under the amended guideline would result in a guideline sentencing range of 33–41 months (offense level 20 and criminal history category I). After consideration of the arguments of the parties, the district court declined to reduce Stoneking's sentence through recalculation of the weight of the LSD under the amended guide-

line. The district court found that "since [Stoneking] would have been subject to the statutory [mandatory] minimum sentence contained in 21 U.S.C. § 841(b)(1)(A), [Stoneking] is still subject to a 120–month sentence and the amended guideline provides no basis for relief from that mandatory minimum sentence." *United States v. Stoneking*, Crim. No. 91–114, slip op. at 1 (S.D.Iowa Dec. 22, 1993). The district court held that the amended guideline was in conflict with the mandatory minimum sentence and thus did not apply. (The district court later reduced Stoneking's sentence to 60 months to ensure uniformity in departure for substantial assistance among the several participants in the conspiracy; that reduction is not relevant to this appeal.) This appeal followed.

For reversal Stoneking argues the district court erred in calculating the weight of LSD on the basis of the LSD and carrier medium, instead of using the per dose weight set forth in the amended guideline, to determine the applicability of a mandatory minimum sentence. He argues the amended guideline should apply to determine the weight of LSD for both the applicability of a minimum mandatory sentence and the applicable guideline sentencing range. In other words, Stoneking argues a single or unitary method should be used to calculate the weight of LSD for sentencing purposes, that is, the per dose weight set forth in the amended guideline, and not a "dual" method, that is, one to determine the applicability of a minimum mandatory sentence and another to determine the applicable guideline sentencing range. He argues that the dual method is so arbitrary and capricious that it violates due process.

As noted above, 21 U.S.C. § 841(b)(1)(A)(v) provides for a mandatory minimum sentence of 10 years for a conviction for a drug offense involving more than 10 grams of a "mixture or substance containing a detectable amount" of LSD. In *Chapman v. United States*, 500 U.S. 453, 461, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991), the Supreme Court concluded that the key term "mixture or substance" in 21 U.S.C. § 841(b)(1) required sentencing based on the entire weight of the LSD and its carrier

medium and not the weight of the pure drug alone. The Court defined "mixture or substance" to require the LSD to be "commingled" with the carrier medium and thus rejected the argument that an inclusive definition could require including the weight of substantially heavier "containers" such as a glass vial or a car in which the LSD is transported. 500 U.S. at 462–63, 111 S.Ct. at 1925–26 (drug and carrier medium must be "blended together so that the particles of one are diffused among the particles of the other"; LSD transported in glass vial or in a car has not "chemically bonded" with either vial or car). As noted above, at the time *Chapman* was decided, the guideline then provided that "the weight of a controlled substance . . . refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) (1992). In short, at that time, the guideline and the statute were consistent. However, the amended guideline substituted a new and substantially less stringent method for calculating drug weight. The difference is illustrated by the facts of the present case. Under the old guideline and *Chapman*, the total weight was 10.54 grams, but under the amended guideline, the total weight is less than 1 gram (709 mgs). The sentencing consequences are dramatic. Under the old guideline and *Chapman*, Stoneking is subject to the 10–year mandatory minimum sentence. However, under the amended guideline, the minimum mandatory sentence provisions would not apply at all and the applicable guideline sentencing range would be 33–41 months.

■ The guidelines themselves provide the answer to the question of how to reconcile the amended guideline and the mandatory minimum sentence. In general, when a statute and a guideline conflict, the statute controls. The guidelines specifically address the conflict between a guideline sentencing range and a mandatory minimum sentence and provide that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable Guideline range, the statutorily required minimum sentence shall be the Guideline sentence." U.S.S.G. § 5G1.1(b). Even more specifically, the commentary to the amended guideline anticipated that the amended guideline would create a dual method of calculating the weight of LSD for sentencing purposes and expressly stated that "this approach [referring to the per dose method set forth in the amended guideline] does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence," citing *Chapman* and U.S.S.G. § 5G1.1(b). This commentary is a "binding interpretation" of the amended guideline which federal courts cannot disregard as long as the commentary does not "run afoul of the Constitution or a federal statute, and it is not 'plainly erroneous or inconsistent' with [that guideline]." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993). The commentary at issue does not violate the Constitution or a federal statute and is not plainly erroneous or inconsistent with the amended guideline. Thus, the commentary to the amended guideline clearly indicates that where the per dose approach conflicts with the mandatory minimum sentence approach, the mandatory minimum approach prevails. *See United States v. Andress*, 47 F.3d 839, 840–41 (6th Cir.1995); *United States v. Hanlin*, 48 F.3d 121, 124–25 (3d Cir.1995); *United States v. Neal*, 46 F.3d 1405, 1408–09 (7th Cir.1995) (banc) (see list of cases at 1410–11), *cert. granted*, —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995). *But see United States v. Muschik*, 49 F.3d 512, 515–16 (9th Cir.1995) (relying upon analysis in panel opinion in the present case).

■ Even if the commentary did not state that it does not purport to override *Chapman*, we do not think the amended guideline could do so. The Sentencing Commission cannot override Congress or the Supreme Court's decision in *Chapman* to establish new mandatory minimum sentences by amending the guidelines. *See United States v. Neal*, 46 F.3d at 1409; *United States v. Boot*, 25 F.3d 52, 55 (1st Cir.1994).

■ Stoneking also argues the dual weight method creates an arbitrary and capricious distinction between drug offenders and violates due process. We disagree. The dual weight method does not violate due process because it increases the penalty for those persons who are involved in greater quanti-

ties of LSD as measured by the actual weight of the LSD as it is distributed, including the carrier medium. This is a rational basis for punishment. *See Chapman,* 500 U.S. at 465, 111 S.Ct. at 1927–28 (sentencing on basis of "street weight" is rational); *United States v. Neal,* 46 F.3d at 1409–10 & n. 5 (describing how mandatory minimum sentencing creates very steep "cliff" unlike guidelines which reflect gradual increase).

In sum, the district court did not err in calculating the weight of LSD on the basis of the LSD and carrier medium, instead of using the per dose weight set forth in the amended guideline, to determine the applicability of a mandatory minimum sentence. The district court correctly sentenced Stoneking to the mandatory minimum sentence.[2]

■ Stoneking also argues the district court should have granted him a 3–point reduction for acceptance of responsibility under Amendment 459, Guideline § 3E1.1(b)(2) (1992). The district court allowed a 2–point reduction under the old guideline. Amendment 459 is not one of the amendments listed in U.S.S.G. § 1B1.10 comment. (app. n. 1) as eligible for retroactive consideration under 18 U.S.C. § 3582(c)(2), and this court has held that it does not apply retroactively. *United States v. Dowty,* 996 F.2d 937, 939 (8th Cir.1993) (per curiam). We hold that the district court did not err in refusing to apply Amendment 459 retroactively.

Accordingly, the order of the district court is affirmed.

BEAM, Circuit Judge, with whom FAGG, BOWMAN and WOLLMAN, Circuit Judges, join, dissenting.

I dissent. To find that weights of LSD must be calculated differently under the

mandatory minimum statute than under the Sentencing Guidelines not only defies rational analysis but also thwarts the avowed Congressional goal of sentencing uniformity. Such a result is not compelled by *Chapman v. United States,* 500 U.S. 453, 468, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991), nor intended by Congress.

The court's opinion holds that Guideline Amendment 488 and 21 U.S.C. § 841(b)(1)(A)(v) are in conflict, and therefore the amended guideline has no applicability to an LSD case involving a mandatory minimum sentence. I disagree. The statute and guideline conflict only under a strained and unnecessarily broad reading of *Chapman* combined with misguided speculation about the intentions of Congress and the Sentencing Commission.

Following the lead of other circuits that have similarly erred, the court accepts the premise that *Chapman* requires the entire carrier medium, whether actually impregnated with LSD or not, to be weighed. *Supra* at 401; *see also United States v. Neal,* 46 F.3d 1405, 1408–09 (7th Cir.) (en banc), *cert. granted,* 63 U.S.L.W. 3898 (U.S. June 20, 1995).[1] To the contrary, *Chapman* requires only that the entire "mixture" be weighed. *Chapman,* 500 U.S. at 459, 111 S.Ct. at 1924. The entire carrier medium is not necessarily part of the offending "mixture." Our task, aided by the expertise of the Sentencing Commission, should be to refine the definition of "mixture" to comply with the Supreme Court's exhortation that some weight of a carrier of LSD be taken into account at sentencing.[2] The real issue is not whether the amendment and the statute conflict, for

---

2. The district court granted the government's motions to depart from the guidelines for substantial assistance pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 and sentenced Stoneking to sentences below the applicable mandatory minimum sentence. The district court's granting the government's motions for downward departure and sentencing Stoneking to sentences below the applicable mandatory minimum sentence on the basis of substantial assistance are completely separate from the issue addressed in the text of the effect of Amendment 488 on the calculation of the weight of LSD for

purposes of determining the applicability of a mandatory minimum sentence.

1. The question presented to the Supreme Court in *Neal* is identical to that decided by the *Stoneking* panel and vacated by this court.

2. We note the court's opinion is clearly wrong when it states, *supra* at 401, that the Supreme Court, in *Chapman,* defined both "mixture and substance." The Supreme Court did say that the *blotter paper* at issue in *Chapman* was a " 'mixture or substance containing a detectable

they do not, but whether the guideline approach is prohibited by the mandatory minimum sentencing statute and *Chapman*. It is not.

## I. BACKGROUND

The mandatory minimum statute in issue imposes five-year and ten-year minimum sentences for the manufacture, distribution or possession with intent to manufacture or distribute, ten grams and one gram, respectively, of a "mixture or substance" containing a *detectable* amount of lysergic acid diethylamide (LSD). 21 U.S.C. § 841(b)(1)(A)(v) and § 841(b)(1)(B)(v). Correspondingly, the relevant sentencing guideline, Section 2D1.1, sets base offense levels for the unlawful manufacture, import and traffick of controlled substances, including LSD.

The Background Notes to Section 2D1.1 show that guideline sentences are designed to match mandatory minimum sentences:

"[t]he base offense levels in § 2D1.1 are either provided directly by the Anti–Drug Abuse Act of 1986 [the mandatory minimum statute] or are proportional to the levels established by statute.... Levels 32 [approximately 10 years] and 26 [approximately 5 years] in the Drug Quantity Table are the distinctions provided by the Anti–Drug Abuse Act [the mandatory minimum statute]; however, further refinement of drug amounts is essential to provide a logical sentencing structure for drug offenses."

USSG § 2D1.1, comment. (backg'd.) (1994). Levels 26 and 32 provide sentences for distribution of LSD which match the mandatory minimum sentences—Level 26 would apply

to one gram or more of LSD and Level 32 would apply to ten grams or more of LSD and provide sentences of approximately the same length as those provided by the statute. "The base offense levels at levels 26 and 32 establish guideline ranges with a lower limit as close to the statutory minimum as possible; *e.g.*, level 32 ranges from 121 to 151 months, where the statutory minimum is ten years or 120 months." *Id.* In short, the weight calculations in the Guidelines match those in the mandatory minimum statute.

Before promulgation of either the amendment now in issue, or the *Chapman* decision which inspired it, the Guidelines stated: "Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." USSG § 2D1.1(c) (Drug Quantity Table) n.*.

In *Chapman*, the issue presented was whether the phrase "mixture or substance" meant the weight of the LSD plus that of its carrier or simply that of the pure drug. 500 U.S. at 458–59, 111 S.Ct. at 1923–24. The Supreme Court held that "mixture" meant the LSD and the material that it is "absorbed in," "mixed with," or "bonded to." *Id.* at 462–63, 111 S.Ct. at 1926. The Court stated that, in the case of blotter paper, "[t]he LSD is diffused among the fibers of the paper," so "reading 'mixture' to include blotter paper impregnated with LSD crystals is ... a reasonable construction of § 841(b)." [3] *Id.* at 462, 464, 111 S.Ct. at 1926–1927.

In response to *Chapman*, the Sentencing Commission amended the Guidelines.[4]

---

amount' of LSD." *Chapman*, 500 U.S. at 461, 111 S.Ct. at 1925. The Supreme Court then noted that the blotter paper (a mixture or substance) combined with pure LSD (a substance) produced an offending *mixture*. *Id.* at 462, 111 S.Ct. at 1925–26.

3. As discussed *infra* at 406, n. 9, under no accepted definition found would a combination of blotter paper and pure LSD be a "substance." It would, however, be a "mixture" under virtually every published definition of that term.

4. In addition to the amendment at issue here, the Sentencing Commission made several other

changes to the Guidelines. One of these was also motivated by the *Chapman* decision. Before amendment, Application note 1 to the Drug Quantity Table, USSG § 2D1.1(c), stated: " 'Mixture or substance' as used in this Guideline has the same meaning as in 21 U.S.C. § 841." USSG § 2D1.1, comment. (n.1) (1992). As amended, the Application note states: " 'Mixture or substance' as used in this Guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." USSG § 2D1.1, comment. (n.1) (1993). The amendment resolved an intercircuit conflict on the post-*Chap-*

Guideline section 2D1.1 states that the weight of a controlled substance "refers to the entire weight of any *mixture or substance containing a detectable amount* of the controlled substance." USSG § 2D1.1(c) (Drug Quantity Table), n.* (1993) (emphasis added). At the end of the asterisk note, the Commission specified that: "In the case of LSD on a carrier medium (*e.g.,* a sheet of blotter paper), do not use the weight of the LSD/carrier medium. Instead, treat each dose of LSD on the carrier medium as equal to 0.4 mg of LSD for the purposes of the Drug Quantity Table."[5] USSG § 2D1.1(c) (Drug Quantity Table) n.* (1993). In an attempt to maintain uniformity,[6] the amended approach thus assigns a standard weight value to the drug-plus-carrier calculation which is *eight times the weight of each dose of pure LSD.*

The Background notes explain the rationale behind the amendments:

Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram[s] for

purposes of determining the base offense level.

The dosage weight of LSD selected exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram[s] (*i.e.,* the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States,* [500 U.S. 453] 111 S.Ct. 1919 [114 L.Ed.2d 524] (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium *in which LSD is absorbed* ). At the same time, the weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. (Treating LSD on a carrier medium as weighing 0.5 milligram[s] per dose would produce offense levels equivalent to those for PCP.) Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level. Nonethe-

*man* meaning of "mixture or substance" in the context of drugs other than LSD. *Compare United States v. Mahecha–Onofre,* 936 F.2d 623, 626 (1st Cir.) *cert. denied,* 502 U.S. 1009, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991) (proper to weigh total weight of cocaine chemically bonded with acrylic to form suitcase); *United States v. Restrepo–Contreras,* 942 F.2d 96, 99 (1st Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992) (proper under *Chapman* to weigh entire beeswax/cocaine statues) *with United States v. Rolande–Gabriel,* 938 F.2d 1231, 1235 (11th Cir.1991) (inclusion of the weight of unusable water not rational); *United States v. Jennings,* 945 F.2d 129, 136–37 (6th Cir.1991) (including weight of poisonous by-products of methamphetamine not proper). *As discussed infra* at 406, these amendments must also be con-

sidered when assessing the meaning of Amendment 488.

**5.** In order to determine a "dose," the Sentencing Commission also amended the Application Notes to section 2D1.1 as follows: "LSD on a blotter paper carrier medium typically is marked so that the number of doses ("hits") per sheet readily can be determined. When this is not the case, it is to be presumed that each ¼ inch by ¼ inch section of the blotter paper is equal to one dose." USSG § 2D1.1, comment. (n.18) (1993).

**6.** Elsewhere in the Guidelines, the Drug Enforcement Agency estimate of the weight of one dose of pure LSD was established as .05 mg. *See* USSG § 2D1.1, comment. (n.11) (Typical Weight Per Unit (Dose, Pill, or Capsule) Table) (1992).

less, this approach does not override the applicability of "mixture or substance" for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b)).

USSG § 2D1.1, comment. (backg'd.) (1993) (emphasis added). The amendments proposed by the Sentencing Commission were adopted by Congress without change.

Thus, as specifically stated in the last sentence of the Background note, when read in context, the amendment was designed to be faithful to *Chapman* and sentencing uniformity. Unfortunately, the court's opinion chooses to misread this final sentence as an admission by the Commission that the amended guideline definition of mixture has no application to the calculation of a mandatory minimum sentence.

## II. DISCUSSION

While statutes, the Guidelines, and case law are involved here, the analysis need not be difficult. The straightforward task of sentencing an LSD offender under both the mandatory minimum statute and the Guidelines, and the harmonization of the two, can be achieved by accurately analyzing *Chapman*. However, examination of the intentions of both Congress and the Sentencing Commission, albeit an unnecessary exercise, lends further support to the application of the amended guideline to Stoneking's sentence. This approach maintains a "match" between a guideline sentence and a mandatory minimum sentence, and avoids a constitutional issue.[7]

### A. *Chapman* and the Mandatory Minimum Statute

My analysis begins with the initial and undisputed premise that when a statute and a guideline conflict, the statute controls.[8] *See, e.g.,* USSG § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.") Since the Guidelines cannot trump a statute, the inquiry can begin and end with the mandatory minimum statute and its interpretation in *Chapman*. The issue is not whether the Sentencing Commission intended its approach to "over-ride" the mandatory minimum statute—it clearly cannot—but whether the mandatory minimum statute, as interpreted in *Chapman,* prohibits the guideline approach. It clearly does not.

At the time of the *Chapman* decision, neither the mandatory minimum statute nor the Guidelines defined "mixture." The Supreme Court therefore resorted to the dictionary definition of the term.[9] *Chapman,* 500 U.S.

---

7. We should, whenever possible, interpret statutes so as to avoid raising constitutional issues. *TCI, Inc. v. Schriock Holding Co.,* 11 F.3d 812, 815 (8th Cir.1993). The court's position creates a constitutional challenge because *Chapman's* holding on the constitutionality of including carrier weight presumes a "match" with the Sentencing Guidelines scheme. The Supreme Court relied on the Sentencing Guidelines as a rational scheme to support its holding that including the weight of the carrier does not violate due process. *Chapman,* 500 U.S. at 465 & n. 5, 111 S.Ct. at 1928 & n. 5. Without congruence between the statute and the Guidelines, it is difficult to find any rational basis for the sentencing disparity that results from the court's "dual weight" approach. Not only will this disparity manifest itself between defendants using different carrier media, it will depend on the nature of the evidence of a drug trafficking offense. For example, a drug trafficker caught in physical possession of LSD (plus carrier) that weighs more than ten grams will be sentenced to ten years. At the same time, a drug trafficker who is convicted on the basis of dosage testimony will usually be sentenced to less time even though he may have sold a much greater quantity of pure LSD. The second trafficker will almost certainly be sentenced according to the assigned weight formula since there is no LSD in physical possession to be weighed. There is no rational basis for such an approach.

8. The court's opinion both begins and ends at this point. The court latches onto the legal truism that a guideline cannot trump a statute. After interpreting *Chapman* with unnecessary breadth to create a conflict between the statute and the guideline, the court finishes with the same aphorism: that statutes control guidelines.

9. Although both the statute and the Guidelines speak in terms of "mixture or substance," the Supreme Court did not define the meaning of "substance" in *Chapman*. Such discussion is absent because LSD crystals impregnated in paper do not fit the definition of "substance." In *United States v. Bishop,* 894 F.2d 981, 986 (8th Cir.), *cert. denied,* 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 77 (1990), we relied on a characterization of LSD-plus-carrier as a "substance" to

at 462, 111 S.Ct. at 1925–26. The Supreme Court said a "mixture" is defined to include:

> "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other.

*Id.* (citations omitted) (quoting *Webster's Third New Int'l Dictionary* 1449 (1986)).

Thus, the Supreme Court's definition of "mixture" depends on the LSD being "commingled" with its carrier medium (most commonly paper or sugar cubes) and "blended together so that the particles of one are diffused among the particles of the other." *Id.* The Court dispensed with the "nonsense" of including the weight of a glass jar containing the LSD or a car in which it is transported. *Id.* at 462–63, 111 S.Ct. at 1925–26. There, "[t]he drug is clearly not mixed with a glass vial or automobile; nor has the drug chemically bonded with the vial or car." *Id.* at 463, 111 S.Ct. at 1926.

Under this definition, only the part of the carrier medium into which the pure drug is commingled, blended or diffused constitutes the "mixture." Thus, weighing the *entire* mixture does not dictate weighing the *entire* carrier medium. For example, if a drop of LSD were deposited onto one corner of a sheet of paper, the opposite corner would not contain any particles of the pure drug, so would not be part of the "mixture." The Supreme Court said only that, to satisfy the "market-based approach" adopted by the Guidelines, some of the carrier, i.e., the "mixture," must be weighed. *Id.* at 459, 461, 468, 111 S.Ct. at 1924, 1925, 1929.

By rejecting the "nonsense" of weighing packaging materials (such as the vial) and by acknowledging that "hypothetical cases can be imagined involving very heavy carriers and very little LSD," the Supreme Court implied that there is a point at which a line must be drawn. *Id.* at 463, 466, 111 S.Ct. at 1926, 1928. It remains the function of a sentencing judge (aided by the Guidelines) to draw that line and make a factual determination on drug quantity. *United States v. Olderbak,* 961 F.2d 756, 763 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 422, 121 L.Ed.2d 344 (1992). Inherent in that function is the duty to determine what combination of pure drug and carrier medium constitutes a "mixture." [10]

What Amendment 488 actually does is establish a standard uniform amount of carrier that judges can attribute as "mixed" with the drug. Sentencing judges are entitled to rely on the expertise of the Sentencing Commission in setting such a uniform weight in much

---

find that including the weight of the carrier was appropriate. As the following discussion illustrates, that holding is no longer good law.

Because the drug statutes and the Guidelines are heavily reliant on chemical formulae and chemistry terminology, we should properly refer to chemical definitions as "terms of art." *See TCI,* 11 F.3d at 814–15 (applying a term of art rather than general definition).

A "substance" is defined as:

[a]ny chemical element or compound. All substances are characterized by a unique and identical constitution and are thus homogeneous. "A material of which every part is like every other part is said to be homogeneous and is called a substance."

*Hawley's Condensed Chemical Dictionary,* 1098 (12th ed. 1993) (quoting Black & Conant, *Practical Chemistry* ). A substance is clearly a more narrow classification than a "mixture," which is defined as:

(mix). A heterogeneous association of substances which cannot be represented by a chemical formula. Its components may or may not be uniformly dispersed and can usually be separated by mechanical means.

*Id.* at 788.

The logical statutory construction of "mixture or substance" in reference to most drugs is that "substance" refers to the pure form of the drug and "mixture" refers to the adulterated or "cut" form of the drug. Thus, as the Supreme Court implicitly noted, drug-plus-carrier can rationally fit only within the definition of "mixture."

**10.** Accordingly, even ignoring the Guidelines, nothing in *Chapman* precludes a judge, sentencing a defendant under the mandatory minimum statute, from taking testimony on how much carrier was "mixed" with the pure drug. A sentencing judge could "draw the line" in this way to prevent the injustice propounded by the extreme hypothetical cases imagined by the Supreme Court in *Chapman.* The Guidelines' assigned weight is simply analogous to "expert testimony" on how much carrier can be defined as mixed with the pure drug.

the same way that they rely on other determinations made by the Commission such as the "Typical Average Weight Per Unit (Dose, Pill, or Capsule) Table." USSG § 2D1.1, comment. (n.11). Thus, the assignment of a uniform and rational weight to LSD on a carrier medium which is eight times the weight of the pure drug involved does not conflict with *Chapman*. *United States v. Muschik*, 49 F.3d 512, 516–17 (9th Cir.1995). The formula set forth in Amendment 488 merely standardizes the amount of carrier medium that can be properly viewed as "mixed" with the drug. *Id.* at 516, *see also Neal*, 46 F.3d at 1411–16 (en banc) (J. Ripple, dissenting) (Amendment 488 is consistent with the mandatory statute).

## B. Congressional Intent

In addition to ascribing an unnecessarily broad meaning to *Chapman*, the court deduces curious intentions on the part of the Sentencing Commission and Congress. The court concludes that the Sentencing Commission intended, and Congress agreed, that the determination of whether a mandatory minimum sentence applies would be made without reference to the weight established by the new guideline. It arrives at this conclusion by depending, with no heed to context, on the isolated caveat in the guideline commentary that "this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence." USSG § 2D1.1, comment. (backg'd.) (1993).

That sentence makes a lot more sense when read in the context of the entire expla-

nation given in the paragraphs above.[11] Read in context, the commentary summarizes the goals the Commission sought to accomplish through the amendment: (1) to harmonize offense levels for different controlled substances; (2) to lessen the "undue influence" that different carrier weights have on the offense level; and (3) to take into account *Chapman*'s interpretation of the terms "mixture or substance" when applying a mandatory minimum sentence. *See Neal*, 46 F.3d at 1414 (en banc) (J. Ripple, dissenting).

There is clearly much more to Amendment 488 than the single sentence relied on by the court. The entire paragraph of commentary, combined with other contemporaneous amendments enacted for other drugs,[12] subsequent amendments,[13] and proposed amendments,[14] makes it clear that while the Commission meant to follow *Chapman*, the Commission also intended to standardize the amount of carrier that can be viewed as "mixed" with pure LSD. As discussed in the commentary, the Commission selected a weight value eight times the actual value of the pure LSD in express recognition of the impact of *Chapman* on weight calculation. USSG § 2D1.1, comment. (backg'd.) (1993).

To assume the opposite is, at best, uncharitable—the Commission, whose mission it is to promote uniformity and fairness in sentencing would not intend to effectuate such a nonuniform and unfair result. *See Muschik*, 49 F.3d at 518. It is similarly unsound to ascribe to Congress the intention of singling out LSD drug offenders for treatment dis-

---

**11.** *See supra* at 405–406.

**12.** *See supra* at 404, n. 4.

**13.** Recent amendments establish a "safety valve" which effectively eliminates mandatory minimum sentences in cases in which: (1) the defendant has no more that one criminal history point; (2) no weapons, violence, serious bodily injury or death were connected with the offense; (3) the defendant is not a leader or organizer; and (4) the defendant has shared all known information about the offense with the government. *See* USSG § 5C1.2 (1994) and 18 U.S.C. § 3553(f) (West Supp.1995). Again, the Guidelines and the statutes dovetail.

**14.** The Commission has recently proposed additional amendments to the Guidelines. *See* 60 Fed.Reg. No. 5, Part II (proposed Jan. 9, 1995), *reprinted in Proposed Guideline Amendments for Public Comment*, United States Sentencing Commission (Jan. 1995). The Commission proposes amending the Drug Quantity Table to account for drug purity. *Id.* at 67 (n.40) (synopsis of proposed amendment). The Commission also proposes changing the methodology for determining quantity of certain depressants from a weight-based calculation to a unit-based calculation. *Id.* at 76, n. 41 (noting little or no connection between gross weight and the strength of the pill). The Commission further proposes discounting the moisture content of marijuana in determining weight. *Id.* at 81, n. 42.

similar to other drug offenders.[15] There is no evidence that Congress singles out LSD offenders as any more dangerous criminals than other drug offenders. In contrast, "crack" cocaine dealers have been so singled out for harsher punishment than their powder cocaine counterparts. *See* USSG § 2D1.1(c); 21 U.S.C. § 841.

The court reaches its result because it perceives itself powerless to avoid absurdity. "Without more—and there is no more—we conclude that Congress simply acquiesced in the restrictive reach of [the amendment]." *United States v. Boot*, 25 F.3d 52, 55 (1st Cir.1994). There is no need for Congress to speak anew. It is only logical to assume that, in allowing the amendment to go into effect without change, Congress agreed with its obvious underlying animus: that the Guidelines dovetail with the mandatory minimum statute. Such a refinement of the sentencing scheme through the action of the Commission, with the knowledge and consent of Congress, is an expected and necessary element of the process contemplated by the present sentencing system. *Muschik*, 49 F.3d at 517–18. In "charging the Commission 'periodically to review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 1857–58, 114 L.Ed.2d 385 (1991) (quoting 28 U.S.C. § 994(*o*)). Here, the Commission performed its congressionally delegated role by amending section 2D1.1 in light of *Chapman* and Congress did not challenge the revision. *Muschik*, 49 F.3d at 517. Because we need not, we ought not run roughshod over the rational interpretation and accommodation of *Chapman*.

## III. CONCLUSION

Amendment 488 is a principled response to the holding in *Chapman*. The amendment clarifies the extent of carrier medium that we ought to consider "mixed" with the pure drug. Amendment 488, Section 841 and *Chapman* can and should be reconciled.

The amendment satisfies *Chapman*'s requirements while promoting the sentencing uniformity Congress sought to achieve when it authorized the Sentencing Guidelines. The amended guideline, in conjunction with *Chapman*, eliminates the disparities in sentencing between drug traffickers who use blotter paper as a medium and those who use sugar cubes as a medium and between those apprehended with the drugs in hand and those who are convicted on dosage and other evidence. The amendment also maintains the "market-oriented" approach under which the total quantity of drugs distributed, rather than the amount of pure drug sold, is used to determine the length of the sentence.

Using two different methods of measurement is neither required by *Chapman* nor sensible. Accordingly, Stoneking's sentence should be adjusted according to the method of measurement delineated in Amendment 488.

---

**15.** Weight calculations and resultant sentences for distribution of other drugs match under the Guidelines and the mandatory minimum statutes. PCP has a different sentencing scheme for distribution of either a pure form of the drug or a mixture containing the drug under both the mandatory minimum statutes and the Guidelines. *See* 21 U.S.C. § 841 and USSG § 2D1.1(c). A recent amendment to the Guidelines, however, defines "cocaine base" more narrowly than it is defined in the mandatory minimum statute. USSG § 2D1.1(c) (1993). *Compare United States v. Munoz–Realpe*, 21 F.3d 375, 377–78 (11th Cir. 1994) (Congressional approval of the narrower definition of cocaine base in the Guidelines amounts to approval of definition for purposes of a mandatory minimum sentence) *with United States v. Palacio*, 4 F.3d 150, 154–55 (2d Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994) (Guidelines amendment applies only to the Guidelines and does not affect mandatory minimum sentence).