# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3045

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Gregory Joseph Halter, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:  March 17, 2000

Filed:  July 3, 2000

_____

Before RICHARD S. ARNOLD, LAY, and BEAM, Circuit Judges.

_____

LAY, Circuit Judge.

Gregory Joseph Halter (Halter) challenges the district court's denial of his petition for habeas relief under 28 U.S.C. § 2255 and the denial of his Motion for a New Trial and Motion to Alter or Amend.  Because we find error in the district court's characterization of dismissed charges as "more serious" than Halter's charge under 18 U.S.C. § 924(c)(1), we vacate and remand for resentencing.

This case involves a constitutionally defective guilty plea to a pre-Bailey[1] charge of using and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). This case arises in the wake of the Supreme Court's recent decision in Bousley v. United States, 523 U.S. 614 (1998). In Bousley, the Court stated that a defendant seeking to set aside a guilty plea under Bailey must show actual innocence of any and all "more serious charges" foregone by the government in the course of plea bargaining. Bousley, 523 U.S. at 624. The question presented here is whether Halter must show his actual innocence of three dismissed distribution charges before he can overcome his procedural default in failing to appeal the validity of his guilty plea.

On February 14, 1992, Halter pleaded guilty to Counts One, Five, and Six of a six-count indictment. Count One charged conspiracy under 21 U.S.C. § 846 relating to drug trafficking in violation of 21 U.S.C. § 841(a)(1); Count Six charged money laundering under 18 U.S.C. § 1956(a)(1)(A)(i); and Count Five was a charge under 18 U.S.C. § 924(c)(1) for using and carrying a firearm during the drug offense. As a result of the plea bargain, the court dismissed Counts Two, Three, and Four, which were charges under 21 U.S.C. § 841(a)(1) relating to the distribution of cocaine on three separate occasions. The district court grouped Counts One and Six according to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 3D1.2(c) and § 3D1.3(a).[2] Because Count One's Base Offense Level was greater than that of Count Six (34 versus 26), Count One was the dominant count from which the district court calculated the total sentence. See U.S. SENTENCING GUIDELINES MANUAL § 3D1.3(a) (1992). Working from a Base Offense Level of 34, the district court assigned Halter four criminal history points (placing him in Criminal History Category III), a four-level increase for his role in the offense, and a two-level reduction for acceptance of

_____

[1]Bailey v. United States, 516 U.S. 137 (1995).

[2]The Pre-Sentence Report states that the applicable grouping Guideline for the conspiracy and money laundering counts is § 3D1.2(d). Actually, the proper grouping Guideline is § 3D1.2(c).

responsibility.  Consequently, Halter had a total offense level of 36, resulting in a sentencing range between 235 and 293 months for the guilty pleas on Counts One and Six, plus the mandatory sixty consecutive months for Count Five.  Upon the government's motion, the defendant was given a reduction in sentence by 33a percent for substantial assistance and thereafter was sentenced to 197 months imprisonment for the three counts.

Halter brought a motion under 28 U.S.C. § 2255 to set aside his § 924(c) mandatory sentence under Bousley.  On May 14, 1999, the district court denied the motion.  Noting that the plea transcript revealed that neither the defendant nor the court correctly understood the essential elements of § 924(c) at the time of the plea, the district court found Halter had only possessed the firearms as opposed to using or carrying them.  Thus, the court found the plea of guilty to the § 924(c) charge was constitutionally invalid.  Due to Halter's procedural default, however, the court could not set aside the § 924(c) plea without Halter first demonstrating his actual innocence on the dismissed drug trafficking charges, if those charges were more serious than the § 924(c) charge.  Recognizing that the dismissed charges provided for a maximum statutory punishment of twenty years, see 21 U.S.C. § 841(b)(1)(C), the district court found the dismissed charges were more serious than the § 924(c) charge, which carries a mandatory statutory penalty of only five years.  Thus, the district court denied Halter's petition because Halter could not show he was actually innocent of the "more serious" dismissed distribution charges.

On July 2, 1999, the district court entertained Halter's Motion for New Trial and Motion to Alter or Amend his judgment of conviction.  Halter argued that the dismissed charges could not be "more serious," since the addition of those counts would have no effect on his sentence because the amount of drugs involved in the dismissed counts was already contemplated in establishing his Guideline range on Count One.  The court noted that Halter's approach was "arguably a reasonable [one]," but rejected it nonetheless.  (Ruling Denying Motion for New Trial and Motion to Alter or Amend at

1-2 (July 2, 1999).)  The court reiterated that "the correct measure of the seriousness of a crime charged is the maximum punishment prescribed for that crime."  (Id. at 2.)

We cannot agree with the analysis of the district court.  We are of the opinion that actual punishment as determined by the Guidelines is the proper basis for identifying the "more serious charge."  Although Congress sets the maximum penalty for the violation of criminal statutes, it has also adopted the Guidelines as the proper sentencing procedure to be followed by all federal courts in determining actual punishment for federal crimes.  See Stinson v. United States, 508 U.S. 36, 42 (1993) ("As we have observed, 'the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases.'"  (quoting Mistretta v. United States, 488 U.S. 361, 391 (1989))).  See also United States v. Douglas, 64 F.3d 450, 452 (8th Cir. 1995) (applying the binding nature of Guidelines to Guidelines amendments).  As such, we are persuaded by the Third Circuit's reasoning in United States v. Lloyd, 188 F.3d 184 (3d Cir. 1999).  In Lloyd, the court was faced with the issue of determining whether a dismissed felon in possession count qualified as "more serious" under Bousley.  The court found significance in the fact that § 924(c) carries a mandatory *consecutive* term while the felon in possession charge carried a Guideline range of 27 to 33 months.  See Lloyd, 188 F.3d at 189.  The Court observed:

> We reject as *improper* the comparison urged by the government of the general *maximum allowable* penalty for [section 922] to the mandatory penalty for [section 924].  Rather, it is the *actual* penalty prospectively assessed this defendant for each Count--determined in accordance with the refining criteria of the United States Sentencing Guidelines and set forth in the government's Presentencing Report--that is relevant to our comparison of the seriousness of the respective charges at the time of the plea bargain.

Id. at 189 n.13 (emphasis added).

We recognize that the statutory maximum serves to limit the actual sentence imposed under the Guidelines where the latter might produce a Base Offense Level resulting in a range that exceeds the maximum provided in the statute. It is not sensible, however, to apply an abstract statutory maximum punishment when the application of the Guidelines to the same conduct leads to a period of imprisonment much shorter than the five-year mandatory sentence under § 924(c). Therefore, we agree with the Third Circuit that the actual punishment, as opposed to the statutory maximum, is the relevant factor in comparing the seriousness of the charges.

In light of this, § 924(c) is obviously the more serious charge despite the statutory maximum of the dismissed charges. The three dismissed charges involved the distribution of 49.61 grams of cocaine on one occasion and 61.7 grams of cocaine on the other two occasions. Standing alone, these offenses carry Base Offense Levels of fourteen and sixteen, respectively.[3] The Guidelines direct the district court to group all related counts, however. Had Counts Two, Three and Four not been dismissed, they would have been grouped under U.S.S.G. § 3D1.2(c) and § 3D1.3(a), along with Counts One and Six.[4]

Upon grouping, the sentences imposed for each grouped count run concurrently, as was the case with Counts One and Six. Had the dismissed charges been successfully prosecuted and grouped with Counts One and Six, they too would have resulted in

---

[3]If these were the only charges successfully brought against Halter, they would be grouped under U.S.S.G. § 3D1.2(d), and the maximum sentence would be controlled by the aggregate quantity of drugs. See SENTENCING GUIDELINES MANUAL § 3D1.3(b) (1998). In this case, the aggregate quantity would be 173.01 grams, resulting in a Base Offense Level of 18.

[4]Because they were dismissed, Counts Two through Four were only included as part of Halter's relevant conduct, and their attendant drug quantities comprised part of the total amount of drugs included in the conspiracy charge.

concurrent sentences. Since the Base Offense Levels for Counts Two through Four range from 14 to 16, Count One, with its Base Offense Level of 34, would remain the dominant charge for sentencing purposes. As a result, the overall calculation would have remained unchanged. Consequently, the distribution counts, even if not dismissed, would have less impact upon the defendant's overall punishment than the five-year <u>mandatory</u> <u>consecutive</u> sentence under § 924(c). Thus, the distribution charges are <u>less</u> serious.

The Guidelines themselves help us discern the relevant factors in determining the "more serious" offense. The Guidelines state that where multiple counts involving substantially the same harm are involved, "the <u>most serious</u> of the counts compris[es] the Group." SENTENCING GUIDELINES MANUAL § 3D1.3(a) (1998). "Most serious" is then defined as "the highest offense level of the counts in the Group." <u>Id.</u> Thus, the Guidelines themselves specifically refer to the "most serious" count as being the one with the higher offense level. We choose to adopt this understanding of the phrase "more serious" for the purpose of applying <u>Bousley</u>.

On this basis, this court finds that the district court's opinion should be vacated and the case remanded to the district court for resentencing. The constitutional invalidity of the § 924(c) count requires the district court to set aside Count Five. To overcome his procedural default, Halter need not show actual innocence of the dismissed charges since they are, on their face, less serious than the § 924(c) count.[5]

---

[5]On remand, in imposing sentence using its previous Base Offense Level, the district court is at liberty to consider whether there are any other relevant factors within the factual circumstances of the offenses and the plea involved. Although Halter is not guilty of carrying or using a firearm under § 924(c), the court might still find that he possessed a firearm during the drug trafficking offenses. This may be a factor for the court to consider under the Guidelines in rendering the actual sentence to be given. See SENTENCING GUIDELINES MANUAL § 2D1.1(b)(1) (1998); <u>United States v. Turpin</u>, 920 F.2d 1377, 1386-87 (8th Cir. 1990).

BEAM, Circuit Judge, concurring and dissenting.

I respectfully suggest the court incorrectly uses the Sentencing Guidelines to determine which count was "more serious." Accordingly, I concur in the result reached by the court but disagree with its reasoning.

The Supreme Court stated in Bousley v. United States, 523 U.S. 614 (1998), that if the Government decided to forego "more serious charges" in a plea bargain involving a Bailey claim, then the petitioner must show he is actually innocent of those charges. Id. at 624. In this case, the petitioner cannot show he is innocent of the foregone charges. Therefore, the only issue for this court is whether those charges were more serious than the gun charge. The Supreme Court, however, provided little guidance on how to decide the issue.

The criminal statutes and the Sentencing Guidelines are the two most logical sources to look to for guidance. Both present Congress' view of a crime's severity through the type and length of punishment imposed. Given these two guideposts, the district court chose to use the statutory maximum punishment to determine the seriousness of a charge. This court now reverses the district court and holds the distinctions should be made by looking at the Sentencing Guidelines.

I disagree with both approaches. This court clearly looks to the wrong source in the guidelines. The district court looked at the right source, but only at one part of it—the statutory maximum. I contend the best approach is to look at both the statutory minimum and the statutory maximum to determine which charge is more serious.

When forced to choose between the Sentencing Guidelines and criminal statutes to determine Congress' true intent, the Supreme Court and this court have consistently held that statutes trump the guidelines. See United States v. LaBonte, 520 U.S. 751 (1997) (discussing career offender determinations); Neal v. United States, 516 U.S. 284

(1996) (discussing drug quantity measures for LSD); United States v. Fountain, 83 F.3d 946 (8th Cir. 1996) (career offender); United States v. Stoneking, 60 F.3d 399 (8th Cir. 1995) (LSD). We have stated that "[i]n general, when a statute and a guideline conflict, the statute controls." Stoneking, 60 F.3d at 402.

Statutes are Congress' clearest statement of intent because they provide a fixed range of punishment for the charge alone, without consideration of any other factors. Thus, in every criminal case, the criminal statute is essentially the starting point for any sentencing analysis. On the other hand, the Sentencing Guidelines are "'essentially a system of finely calibrated sentences'" that account for many factors in addition to the charge. Neal, 516 U.S. at 292 (quoting United States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System iii (Aug. 1991)). For example, the guidelines provide for grouping of charges for sentencing and adjustments of a sentence for "acceptance of responsibility," "substantial assistance," "more than minimal planning," "vulnerable victim" and many other similar factors. The Sentencing Guidelines create steadily increasing penalties based on appropriate factors, while the mandatory sentences of the statutes result in "cliffs." See id. Because they are so clear-cut, it is those "cliffs" that show in dramatic terms the severity of a crime and that provide courts with the most guidance in determining which crime is more serious.

The folly of using the Sentencing Guidelines to compare the relative seriousness of different offenses is graphically laid out in this case. The district court gave Halter a two-level reduction for acceptance of responsibility, and reduced his sentence by one-third for substantial assistance. These two sentence reductions may not have been granted if not for the mistaken assumption that Halter would have to serve sixty-months' imprisonment for a gun charge in addition to any other sentence he was given. It is difficult now for any court to go back and re-create the strategy the government would have pursued at sentencing without the gun charge. Additionally, it is hard to retrace the steps the district court would have taken under the Sentencing Guidelines

to arrive at a fair sentence without the gun charge. Therefore, the use of the Sentencing Guidelines is fraught with many more complications than the Supreme Court could have possibly anticipated when it held that a petitioner's showing of actual innocence needed to extend to the more serious charges.

Although the approach of using the criminal statutes to determine which charge is more serious also has imperfections, these imperfections are fewer than those presented by the guidelines. In most cases, Congress will have set forth a clear minimum and a clear maximum. If both the statutory minimum and the maximum for a given charge are higher than the five years required for the gun charge, then the charge is more serious. If the minimum and maximum are both less than for the gun charge, then the gun charge is more serious. It is only in those cases where the maximum is higher and the minimum is lower, that the determination becomes more complex.

This, unfortunately, is one of those cases. Halter was charged with a violation of 18 U.S.C. § 924(c)(1), for the use or carrying of a firearm during a drug offense. This charge carries a sentence of five years. He was also charged with three counts of drug distribution in violation of 21 U.S.C. § 841(a)(1). Each of those charges carries a maximum sentence of "not more than twenty years," but no minimum sentence is given. Thus, we are faced with the situation where the minimum could be lower than that of the gun charge, and a maximum that is higher. In this situation, the rule of lenity should be applied.

The rule of lenity prevents a court from interpreting a criminal statute to increase the penalty the statute places on an individual when such an interpretation is based on no more than a guess about Congress' intentions. See United States v. Lazaro-Guadarrama, 71 F.3d 1419, 1421 (8th Cir. 1995). Accordingly, the rule of lenity allows courts to resolve doubts about the ambiguity of which charge is more serious in favor of a petitioner. See United States v. Warren, 149 F.3d 825, 828 (8th Cir. 1998).

Thus, because the drug distribution charges carry lower minimum sentences than the gun charge, the gun charge is the "more serious charge." As a result, Halter's procedural default is excused.

This conclusion does not end in sentencing certainty. The section 924(c) gun charges precluded the district court from considering the possible use or possession of a firearm in its initial sentencing calculus. With the vacation of that charge, the court may now do so. Accordingly, I would also reverse the district court and remand the case for resentencing but in a manner consistent with this concurrence and dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.